

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Jno. S. McAdams, Commissioner
State Department of Banking
Austin, Texas

Dear Mr. McAdams:

Opinion O-5646
Re: Whether or not a private
bank domiciled within the
State of Texas may pay its
depositors, discontinue
the acceptance of deposits
and continue to accept loans
and at the same time retain
its identity and legal sta-
tus as a private bank.

Your letter requesting an opinion concerning the above subject matter is as follows:

"May I have your opinion as to whether a private bank domiciled within this State may pay its depositors and continue to accept loans and at the same time retain its identity as a private bank. The institution we have in mind is unable to make the expense incident to the servicing of deposits and is thinking seriously of returning to its depositors their money, but does not want to follow such a course if by so doing it would relinquish its private banking status.

"We would like to know also if a private bank in this State may be moved from its present location to the corporate limits of another town."

Article 2 of Chapter IX of the Texas Banking Code of 1943 as passed at the regular session of the forty-eighth Legislature is as follows:

"It shall be unlawful for any person, corporation, firm, partnership, association or common law trust:
(1) To conduct a banking or trust business or to hold out to the public that it is conduct-ing a banking or trust business; or

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Jno. Q. McAdams, page 2

(2) To use the term 'bank,' 'bank and trust,' 'savings bank,' 'trust' or any similar term in its name, stationery or advertising. Provided, however, that this article shall not apply to (1) national banks, (2) state banks, (3) other corporations heretofore or hereafter organized under the laws of this State or of the United States to the extent that such corporations are authorized under their charter or the laws of this State or of the United States to conduct such business or to use such term, and (4) private banks which were actually and lawfully conducting a banking business on the effective date of this Act so long as the owners of such bank, their successors or assigns, shall continuously conduct a banking business in the city or town where such private bank was domiciled on the effective date of this Act; provided, however, that such private banks shall include the word 'Unincorporated' in their firm or business names and such word shall be prominently set out upon the stationery and in all of the advertising of such private banks. This article shall not bar an individual from acting in any fiduciary capacity, if he does not hold out to the public that he is conducting any branch of the trust business. Any person violating any provision of this article shall, upon conviction, be fined not less than Five Hundred Dollars ($500), nor more than One Thousand Dollars ($1,000)."

It will be seen from (4) of (2) of Article 2 above quoted that the private banks exempted from the prohibition to conduct a banking or trust business or to hold out to the public that they are conducting a banking or trust business, are private banks which were actually and lawfully conducting a banking business on the effective date of this act.

What we shall say hereafter is therefore upon the assumption that the particular private bank as to which you inquire is such a private bank as was actually and lawfully conducting a banking business on the effective date of the present Banking Code.

The well recognized functions of the banking business have long been, (1) the issuance of notes intended to circulate as money; (2) the acceptance of deposits of money

to be paid upon the order of the depositor; and (3) the discounting of commercial paper. In late years of course the first of these functions has not been exercised so that the present essential functions of the banking business are the acceptance of deposits and the discounting of paper. The mere lending of money as contradistinguished from discounting paper is not of itself an exclusive function of banking.

The exemption of private banks from the proscription of law as to banking is not limited to those private banks that are engaged in accepting deposits, nor yet to those private banks that are doing a deposit and a discount business. It applies generally to private banks "which were actually and lawfully conducting a banking business on the effective date" of the Code.

Now Article 1 of Chapter III of the Banking Code authorizes the incorporation of a state bank "with any one or more or all of the following powers:

"(a) To receive time and demand deposits at interest or without interest; to lend money with or without security at interest; and to buy, sell and discount bonds, negotiable instruments and other evidences of indebtedness.

"(b) To act as fiscal agent, * * *;

"(c) To act as trustee under any mortgage or bond issue, * * *;"

and to perform other functions separately lettered in paragraphs as are the preceding paragraphs.

Article 376 of the Revised Civil Statutes of 1925 (repealed by the Banking Code Act) was worded somewhat differently. It permitted an incorporation "for the purpose of establishing: (a) a bank of deposit or discount, or both of deposit and discount; (b) a banking and trust company; or (c) a savings bank."

Under the law as it existed before the adoption of the Banking Code it is clear that a bank could be organized either as a bank of deposit or as a bank of discount or as a savings bank or for any two of such purposes. Whether under the Texas Banking Code a bank may be organized as a bank of deposit only or a bank of discount only, we need not to decide for the purpose of answering your inquiries.

We are of the opinion the private bank involved in your inquiry whether it exercised the powers of accepting deposits or of making purchase of commercial paper on discount, or both, would be "conducting a banking business" and therefore within the exemption heretofore discussed under Article 2, Chapter IX of the Code.

Your first question therefore is answered to the effect that the private bank may pay off its deposit accounts and cease to do a deposit business, and thereafter do a discount business without losing its status as a private bank under the law. Of course such bank could also make ordinary loans upon interest as contradistinguished from discounting commercial paper for this is not strictly speaking a bank function, but the same is of couse universally exercised by banks as an incident to the strictly banking function of accepting deposits. Accepting deposits by a bank without the incidental power to lend the money would be of little or no value, for the relation of depositor and banker is that of creditor and debtor, not of bailor and bailee.

Further, it is our opinion that such a private bank in this State may not be moved from its domicile to another location. Article 2 of Chapter IX of the Banking Code respects private banks coming within the exemption (4) "so long as the owners of such bank, their successors or assigns, shall continuously conduct a banking business in the city or town where such private bank was domiciled on the effective date of this act," but no longer.

Yours very truly

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS:gm

APPROVED OCT 13, 1943

ATTORNEY GENERAL OF TEXAS